# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **TRAFFIC TECH, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 15 C 8014** |
| | ) | |
| **ARTS TRANSPORTATION, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Arts Transportation's (Arts) and Defendant Artiom Sviderschi's (Sviderschi) motion to dismiss, and on Plaintiff Traffic Tech, Inc.'s (Traffic) motion to dismiss the amended counterclaim. For the reasons stated below, Defendants' motion to dismiss is granted in part and denied in part, and Traffic's motion to dismiss is denied.

## BACKGROUND

PepsiCo., Inc. (Pepsi) allegedly hired Traffic to arrange for the transportation of a load of dehydrated apple slices (Slices) from Washington to a Quaker Oats facility in Iowa in May of 2015. Traffic then allegedly hired Arts to perform the transportation services. Traffic and Arts allegedly entered into a Broker-Carrier

Transportation Agreement (Agreement) regarding the transportation services. Sviderschi is allegedly the President and sole officer of Arts.

According to Traffic, Arts improperly allowed the Slices to be packed in a truck trailer (Trailer) along with two tires. When the Trailer arrived in Iowa, the load was rejected due to the presence of the tires, which allegedly violated food safety laws. Pepsi allegedly contacted Traffic to inform Traffic of the food safety violations and told Traffic to await further instructions. Traffic then allegedly forwarded the information to Arts and told Arts to await further instructions. Arts then allegedly decided to dispose the Slices without permission from Traffic resulting in a total loss of the Slices. Traffic subsequently paid Pepsi $136,110.62 in damages for the failure to deliver the Slices. Traffic includes in its complaint breach of contract claims (Count I), claims alleging a violation of the Carmack Amendment, 49 U.S.C. § 14706 (Count II), and claims alleging a breach of 49 C.F.R. § 370.11 (Section 370.11) (Count III).

Defendants have also filed an amended counterclaim. Defendants contend that when Arts picked up the Slices, Arts was instructed by Pepsi's representatives to move the tires into the Trailer with the Slices. When Arts delivered the Slices to Iowa, Quaker Oats rejected the Slices based solely on the presence of the two tires and made no effort to inspect the Slices. Defendants contend that the rejection was not justifiable and that Traffic refused to provide any meaningful guidance for the handling of the Slices in a timely manner. Defendants include in the counterclaim breach of contract claims. Defendants now move to dismiss the claims brought

2

against them in the complaint, and Traffic moves to dismiss the claims brought against it in the amended counterclaim.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *see also Morgan Stanley Dean Witter, Inc.*, 673 F.3d at 622 (stating that "[t]o survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged")(quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))(internal quotations omitted).

## DISCUSSION

I.  Defendants' Motion to Dismiss

Defendants contend that Traffic has not alleged sufficient facts to hold

Sviderschi individually liable, or alleged sufficient facts to state a valid claim against

either Defendant.

### A.  Claims Brought Against Sviderschi Individually

Defendants argue that Traffic has not pled sufficient facts to support a piercing

of the corporate veil theory to hold Sviderschi individually liable.  Both sides agree

that Illinois state law governs the theory.  (D Mem. Dis. 3); (T Resp. 12).  Generally,

a corporation has an existence apart from "its shareholders, officers, directors and

related corporations, and those individuals and entities ordinarily are not subject to

corporate liabilities." *Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 610

(7th Cir. 2009).  However, a plaintiff may seek to hold such individuals or entities

liable under the piercing of the corporate veil theory, which "is an equitable remedy

governed by state law."  *Id.*  In order to hold an individual liable under Illinois law

pursuant to the piercing of the corporate veil theory, the plaintiff must establish: (1)

that "there is such a unity of interest and ownership that the separate personalities of

the corporation and the individual no longer exist," and (2) that the "circumstances

are such that adhering to the fiction of a separate corporate existence would promote

injustice or inequity."  *Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356

F.3d 731, 736 (7th Cir. 2004)(emphasis omitted).

Plaintiffs allege that Sviderschi is the President and sole officer of Arts and that he acted wrongfully. (Compl. Par. 9). However, that is not sufficient to hold him personally liable in this action. As indicated above, the general rule is that a corporate representative is not liable for his actions taken on behalf of the entity he represents. Plaintiffs also contend that Arts fails to follow corporate formalities by not holding annual shareholder meetings, and by not keeping minutes. (Compl. Par. 34). Even when considering such facts, that still would not be sufficient to suggest that the corporate veil should be pierced. Traffic also contends that Arts was "not adequately capitalized," but Traffic fails to offer any concrete facts to suggest that such conclusion is accurate. (Compl. Par. 35). Plaintiffs further state that "there is no real separation between . . . Arts and . . . Sviderschi." (Compl. Par. 34). However, that is a legal conclusion which Traffic must support with facts. Traffic has not done so.

In response to the instant motion, Traffic also claims to have discovered some additional facts relating to this issue. (T Resp. 13). Traffic, however, did not present such allegations in the complaint or even cite to any documentary exhibits to support such assertions. If Traffic desired to pursue a claim under the piercing of the corporate veil theory, it was incumbent upon Traffic to allege sufficient facts in its complaint to suggest that liability under such a theory is warranted. Traffic has failed to allege such facts to support the extraordinary relief of piercing the corporate veil. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d

371, 379 (7th Cir. 2008)(stating that "[p]iercing the corporate veil is not favored and in general, courts are reluctant to do so").  Therefore, Defendants' motion to dismiss the claims brought against Sviderschi in his individual capacity is granted.

### B.  Preemption of State Law Claims

Defendants argue that the state law claims are preempted by the Carmack Amendment.  In general, the Carmack Amendment "preempts separate state-law causes of action that a shipper might pursue against a carrier for lost or damaged goods." *REI Transp., Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 697 (7th Cir. 2008); *see also Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 288-89 (7th Cir. 1997)(indicating that "the Carmack Amendment bars a shipper from seeking any other remedy either state statutory or common law provides against a carrier for damages to the shipper's goods that have been transferred in interstate commerce").  However, the preemption does not apply to "every claim even remotely associated with the transfer of goods from one place to another. . . ." *Gordon*, 130 F.3d at 288-89 (indicating that such a claim would not necessarily be "a claim for damages to the shippers' goods").  A carrier may still be liable "for certain kinds of separate and independently actionable harms that are distinct from the loss of, or the damage to, the goods." *Id.*

In the instant action, Traffic is not bringing claims as a shipper against a carrier.  Instead, Traffic is bringing claims for indemnity as a broker.  Other courts have recognized such claims as separate and distinct claims outside the scope of the

Carmack Amendment.  *See Keystone Logistics, Inc. v. Struble Trucking LLC*, 2014 WL 6750052, at *3 (N.D. Ind. 2014); *Nat'l Bankers Trust Corp. v. Peak Logistics, LLC*, 2014 WL 5343639, at *3 (W.D. Tenn. 2014)(holding that Carmack Amendment did not preempt claims brought by a broker against a carrier); *TransCorr Nat. Logistics, LLC v. Chaler Corp.*, 2008 WL 5272895, at *3 (S.D. Ind. 2008)(explaining that "[t]he purpose of the Carmack Amendment is to prevent carriers from being placed in the untenable position of having to determine what their liability may be in many jurisdictions with differing laws" and that "[l]iability issues under broker-carrier contracts do not raise the same concern because parties to the contracts may reasonably expect that their contracts will be interpreted consistently by the law of the jurisdiction in which the contract was made"); *Viasystems Techs. Corp., LLC v. Landstar Ranger, Inc.*, 2011 WL 2912763, at *9 (E.D. Wis. 2011)(stating that "[t]o fall within the confines of the Amendment, the party causing the loss must be a motor carrier or freight forwarder; the Amendment does not apply to brokers").

The reasoning that the broker is separate from the shipper and the carrier as well is also consistent with the caselaw indicating that a broker cannot be sued as a carrier under the Carmack Amendment.  *See Hewlett-Packard Co. v. Brother's Trucking Enterprises, Inc.*, 373 F. Supp. 2d 1349, 1351-52 (S.D. Fla. 2005)(stating that "[t]he Carmack Amendment governs carriers, not brokers"); *Custom Cartage, Inc. v. Motorola, Inc.*, 1999 WL 89563, at *3 (N.D. Ill. 1999)(stating that the "Carmack Amendment is silent on the issue of broker liability").  In the instant

action, Traffic does not appear on the Bill of Lading and is not seeking to recover pursuant to the contract that was formed with that document. Traffic is proceeding in this case with the separate Agreement. *Keystone*, 2014 WL 6750052, at *3 (explaining that bill of lading and broker agreement involved two separate contracts). Traffic is not asserting rights in this case as an assignee of Pepsi's rights. *See Nat'l Bankers Trust Corp.*, 2014 WL 5343639, at *3 (noting that there was no "allegation that [the broker was] simply enforcing the shipper's claims as assignee"). Thus, the state law breach of contract claims are not preempted by the Carmack Amendment. Therefore, Defendants' motion to dismiss the state law breach of contract claims (Count I) is denied.

### C. Carmack Amendment Claims

Defendants argue that Traffic cannot bring Carmack Amendment claims since Traffic is merely a broker and not a shipper. As explained above, "the Carmack Amendment bars a *shipper* from seeking any other remedy either state statutory or common law provides against a *carrier* for damages to the shipper's goods that have been transferred in interstate commerce." *Gordon*, 130 F.3d at 288-89 (emphasis added). As explained above, Traffic is able to avoid preemption by showing that it is proceeding on its own independent rights and not as an assignee of Pepsi's rights. As Traffic acknowledges, courts have been reluctant to find that brokers can be sued by shippers under the Carmack Amendment because the Carmack Amendment addresses the liability of carriers. *Hewlett-Packard Co.*, 373 F. Supp. 2d at 1351-52.

Under similar logic, a broker is not a shipper and cannot thus sue a carrier under the Carmack Amendment. *See Exel, Inc. v. S. Refrigerated Transp., Inc.*, 807 F.3d 140, 148-49 (6th Cir. 2015)(stating that "[n]othing in the Carmack Amendment suggests that Congress also intended to protect the broker-carrier relationship by granting brokers a direct right to sue under the statute"). Traffic cites to *REI*, in which the Court allowed a broker to pursue a claim against a carrier under the Carmack Amendment. 519 F.3d at 698-99; (T Resp. 5-6). However, in *REI*, the broker was proceeding as an assignee of the shipper's rights and the Court only mentions the broker's status in passing. *Id.* at 694-95. The Court in addressing the Carmack Amendment specifically addressed the rights of a shipper, not of a broker. *See id.* at 697-99 (stating that "a shipper cannot bypass these limits by filing a state suit for the damaged goods unless the claim seeks to remedy a 'separate and independently actionable harm'")(quoting *North American Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 458 (7th Cir. 1996)). Although Traffic now asserts without evidentiary support that it has been assigned Pepsi's rights, no allegation of such an assignment is presented in the complaint. The allegations in the complaint suggest only that Traffic is seeking to proceed in its own right as a broker. If Traffic in fact was seeking to stand in the shoes of Pepsi in this case, the preemption analysis discussed above would be different. *See Keystone*, 2014 WL 6750052, at *3 (finding that "[b]ecause [the plaintiff was] seeking to recover on a contract which is not a bill of lading, the Carmack Amendment d[id] not apply and there [was] no preemption"). Traffic thus cannot proceed under the Carmack Amendment. Therefore, Defendants'

9

motion to dismiss the Carmack Amendment claims (Count II) is granted.


   D.  Section 370.11 Claims

   Defendants argue that there is no private cause of action under Section 370.11.

Section 370.11 is merely a regulation implementing the Carmack Amendment.  It

does not expressly or impliedly provide a private cause of action.

Traffic has not cited any controlling precedent indicating that such a private cause of

action is recognized.  In addition, Traffic acknowledges that the claim could only go

forward if the Carmack Amendment claims were still alive in this case.  (T Resp. 2).

Therefore, Defendants' motion to dismiss the Section 370.11 claims (Count III) is

granted.  The court also notes that although the only federal claim has been dismissed

in this action, Traffic contends that there is diversity subject matter jurisdiction in

this action.  (T Resp. 14).


II.  Traffic's Motion to Dismiss

   Traffic argues that Arts has failed to allege sufficient facts to state a valid

claim in its amended counterclaim.  Traffic contends that there is no evidence that

Arts paid any funds to Pepsi or suffered any damages as a result of the loss of the

Slices.  Traffic repeatedly argues that the factual assertions in the counterclaim are

not accurate.  Traffic contends that it "is truly baffled as to how [Arts] can claim that

it suffered anything. . . ."  (T Mem. Dis. 2).  However, it is premature to raise such

factual disputes at the pleadings stage.  At this pleadings stage, Arts merely needs to

plead allegations, which must be accepted as true. *Appert*, 673 F.3d at 622. Arts alleges that it performed services for which it was not compensated and that its driver was forced to incur delay while awaiting instructions from Traffic and that no timely instructions were given. Such facts suggest potential damages suffered by Arts.

Traffic also points to facts outside the pleadings such as Traffic's claim that it has never received an invoice from Arts seeking payment. While Traffic can present such evidence at the summary judgment stage, the focus of the court's inquiry at this juncture is the sufficiency of the pleadings. Traffic also argues that based on its version of the facts and reading of the Agreement, it owed no contractual duty to Arts. Again, however, Traffic is seeking to contest Arts' allegations at this initial pleadings stage, which is improper. Arts has alleged sufficient facts to suggest valid claims. Therefore, Traffic's motion to dismiss the amended counterclaim is denied.

The court does note however, that under Illinois law, the covenant of good faith and fair dealing is not a basis for an independent cause of action. *Spadoni v. United Airlines, Inc.*, 2015 IL App (1st) 150458, ¶ 59. Thus, to the extent that Arts seeks to pierce a claim premised on that covenant it would not be a recognized cause of action under Illinois law.

## CONCLUSION

Based on the foregoing analysis, Defendants' motion to dismiss the claims brought against Sviderschi, the Carmack Amendment claims, and the Section 370.111 claims is granted. Defendants' motion to dismiss the breach of contract claim brought against Arts is denied. Traffic's motion to dismiss the amended counterclaim is denied.

_Samuel Der-Yeghiayan_
Samuel Der-Yeghiayan
United States District Court Judge

Dated: April 1, 2016